1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10  KELVIN CARVER JOHNSON,

11           Plaintiff,                    No. CIV S-05-0298 JAM JFM P

12       vs.

13  THE DIRECTOR OF
    CORRECTIONS, et al.,                   FINDINGS AND RECOMMENDATIONS
14
             Defendants.
15  _____/

16           Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to

17  42 U.S.C. § 1983.  Plaintiff claims that defendant Donald Neal, R.N. violated his rights under the

18  Eighth Amendment by acting with deliberate indifference to plaintiff's serious medical needs.

19  This matter is before the court on defendant Neal's motion for summary judgment.

20              SUMMARY JUDGMENT STANDARDS UNDER RULE 56

21           Summary judgment is appropriate when it is demonstrated that there exists "no

22  genuine issue as to any material fact and that the moving party is entitled to a judgment as a

23  matter of law."  Fed. R. Civ. P. 56(c).

24           Under summary judgment practice, the moving party

25           always bears the initial responsibility of informing the district court
             of the basis for its motion, and identifying those portions of "the
26           pleadings, depositions, answers to interrogatories, and admissions

1    on file, together with the affidavits, if any," which it believes
     demonstrate the absence of a genuine issue of material fact.
2

3    <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the

4    nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary

5    judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers

6    to interrogatories, and admissions on file.'"  <u>Id.</u>  Indeed, summary judgment should be entered,

7    after adequate time for discovery and upon motion, against a party who fails to make a showing

8    sufficient to establish the existence of an element essential to that party's case, and on which that

9    party will bear the burden of proof at trial.  <u>See id.</u> at 322.  "[A] complete failure of proof

10   concerning an essential element of the nonmoving party's case necessarily renders all other facts

11   immaterial."  <u>Id.</u>  In such a circumstance, summary judgment should be granted, "so long as

12   whatever is before the district court demonstrates that the standard for entry of summary

13   judgment, as set forth in Rule 56(c), is satisfied."  <u>Id.</u> at 323.

14          If the moving party meets its initial responsibility, the burden then shifts to the

15   opposing party to establish that a genuine issue as to any material fact actually does exist.  <u>See</u>

16   <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  In attempting to

17   establish the existence of this factual dispute, the opposing party may not rely upon the

18   allegations or denials of its pleadings but is required to tender evidence of specific facts in the

19   form of affidavits, and/or admissible discovery material, in support of its contention that the

20   dispute exists.  <u>See</u> Fed. R. Civ. P. 56(e); <u>Matsushita</u>, 475 U.S. at 586 n.11.  The opposing party

21   must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

22   of the suit under the governing law, <u>see</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248

23   (1986); <u>T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir.

24   1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

25   return a verdict for the nonmoving party, <u>see</u> <u>Wool v. Tandem Computers, Inc.</u>, 818 F.2d 1433,

26   1436 (9th Cir. 1987).

1	In the endeavor to establish the existence of a factual dispute, the opposing party

2	need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

3	claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

4	versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

5	judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

6	genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory

7	committee's note on 1963 amendments).

8	In resolving the summary judgment motion, the court examines the pleadings,

9	depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

10	any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

11	477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the

12	court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.

13	Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

14	produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

15	Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

16	1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

17	show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken

18	as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

19	'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

20	On March 24, 2006, the court advised plaintiff of the requirements for opposing a

21	motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v. Rowland, 154

22	F.3d 952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999), and Klingele v.

23	Eikenberry, 849 F.2d 409 (9th Cir. 1988).

24	/////

25	/////

26	/////

3

ANALYSIS

I. Facts[1]

At all times relevant to this action, plaintiff was a state prisoner housed at California State Prison-Solano (CSP-Solano).  At all times relevant to this action, defendant Neal was employed as a nurse at CSP-Solano.  According to plaintiff, on the evening of January 4, 2001, plaintiff was eating a dinner of beef stew when he experienced a sensation of food being stuck in his throat that he could neither swallow nor regurgitate.  He forcibly pushed the food down, at which point he experienced a sudden onset of pain in his chest.  He was unable to swallow and experienced extreme pain with every breath.  Plaintiff ran out of the chow hall and fell down on a bench outside a program office.  He described what had happened to two correctional officers.  The officers then took plaintiff to the primary clinic at CSP-Solano.

Plaintiff arrived at the clinic at approximately 6:45 p.m.  Defendant Neal, a registered nurse, was on duty at the clinic.  Declaration of Donald Neal, R.N., in Support of His Motion for Summary Judgment, filed November 16, 2007 (Neal Declaration), at ¶ 5.  There was no physician on duty.  Id.  Physicians were not in the clinic on nights or weekends, but a physician was available by telephone in the case of emergencies.  Id. at ¶ 4.

Plaintiff says he described his symptoms to defendant Neal.  On the care record of plaintiff's visit prepared by defendant Neal on January 4, 2001, defendant Neal characterized plaintiff's complaint as "severe."  Ex. A to Neal Declaration.  Defendant Neal says he checked plaintiff's vital signs and looked down plaintiff's throat.  Defendant Neal "saw nothing out of the ordinary" when he looked down plaintiff's throat.  Neal Declaration, at ¶ 8.  Defendant Neal found plaintiff's lungs and chest clear, his respiration "unlabored" and his respiration rate "normal at 18."  Id. at ¶ 9.  Defendant Neal found plaintiff's blood pressure "slightly elevated at 160/95, as was his pulse at 112."  Id.  Fifteen minutes later, on re-check, defendant Neal found

---

[1] Except as otherwise noted, the following facts are undisputed.

1    plaintiff's pulse had dropped to 94.  <u>Id</u>.  Defendant says that that suggested to him that "whatever

2    pain or anxiety [plaintiff] had been feeling when he arrived in the primary clinic was

3    dissipating."  <u>Id</u>.  According to Neal, plaintiff told defendant Neal he had not been coughing

4    before he came to the clinic and plaintiff did not cough during the assessment.  <u>Id</u>.

5            Defendant Neal performed an electrocardiogram (EKG) to determine whether

6    plaintiff had "experienced a cardiac event."  <u>Id</u>. at ¶ 11.  The EKG was normal, so defendant Neal

7    "concluded that [plaintiff]'s complaints of chest pain were not due to a heart attack."  <u>Id</u>.

8    Defendant Neal says he ruled out "a possible aortic dissection" because plaintiff's chest sounds

9    were normal and because plaintiff was "up and walking and . . . breathing normally."  <u>Id</u>. at ¶ 12.

10   Defendant Neal says he ruled out a pulmonary embolism or ruptured varicose vein "based on the

11   absence of coughing or any sign of internal bleeding, such as the coughing up of blood."  <u>Id</u>.  He

12   says he also ruled out an upper-respiratory infection based on the absence of a fever.  <u>Id</u>.  He says

13   he next looked for pneumomediastinum, "a condition in which air is present in the mediastinum,

14   or chest cavity, due to a leak from any part of the lungs or airways.  It is identified by a crunching

15   sound as the patient breathes.  It is often secondary to another conditions.  One of the initial signs

16   of a ruptured esophagus, for instance, is often pneumomediastinum."  <u>Id</u>. at ¶ 13.  Defendant

17   Neal says he ruled out pneumomediastinum because plaintiff's "lung sounds were clear and

18   without the crunching sound."  <u>Id</u>.

19           Defendant Neal next says he concluded that "it appeared that [plaintiff] was

20   suffering from a simple case of heartburn."  <u>Id</u>. at ¶ 14.  He therefore gave plaintiff Maalox and

21   water.  Defendant Neal avers that plaintiff told him initially that the Maalox had helped the

22   symptoms, but then told defendant Neal "the pain had returned."  <u>Id</u>. at ¶ 15.  Defendant Neal's

23   treatment notes reflect that "H2O, Maalox exacerbated the pain."  Ex. A to Neal Declaration.

24           Defendant Neal says he then decided that plaintiff's condition was not an

25   emergency, "issued a medical ducat to [plaintiff] so that he could return to the primary clinic the

26   following morning and be seen by a physician."  <u>Id</u>. at ¶ 17.  Plaintiff then returned to his housing

1  unit.

2         Although in his care note he characterized plaintiff's complaint as severe, <u>see</u>

3  <u>supra</u>, defendant Neal describes plaintiff during the visit as "relatively calm," speaking in a

4  "normal voice," walking calmly around the treatment room and "breathing normally." <u>Id</u>. at ¶

5  10.  Plaintiff avers that he was frantic and "experiencing some very extreme exacerbating pain"

6  just trying to breathe."  Second Amended Complaint, filed May 24, 2005, at 4.

7         Plaintiff avers that during the night he experienced severe pain and fluctuating

8  body temperature, and that he vomited blood.  On the morning of January 5, 2001, plaintiff was

9  taken to Queen of the Valley Hospital.  He underwent an exploratory thoracotomy.  During the

10  surgery, surgeons discovered a six centimeter tear in plaintiff's esophagus.  The cause of the tear

11  was unclear to the physicians who treated plaintiff.  Klingman Deposition, at 15-17.  The tear

12  was surgically repaired during the procedure on January 5, 2001.

13         Defendant Neal has presented evidence, undisputed by plaintiff, that spontaneous

14  rupture of the esophagus is an  diagnosis that a nurse would not be expected to make.  <u>See</u>

15  Deposition of Dr. Robert Ray Klingman, M.D., lodged November 16, 2007 (Klingman

16  Deposition), at 19-20.  Defendant has also presented evidence that swallowing Maalox or water

17  exacerbated pain would lead a physician to "start thinking there might be something wrong with

18  the esophagus."  Klingman Deposition, at 28-29.  Dr. Klingman gave the following testimony at

19  his deposition:

20         Q:  If the patient reported that taking the Maalox exacerbated the
       pain they were feeling would that lead you to any conclusions as to
21         the cause of the pain?

22         A:  Yeah.  You might be thinking there's something wrong with
       the esophagus.  The swallowing makes it worse, yeah, sure, you
23         would be leading me down that road.

24         Q:  If a nurse had administered the Maalox would you expect if the
       patient said that ingesting the Maalox had cause pain would you
25         expect the nurse to deduce that an esophageal tear was a
       possibility?

26

1    A:  I would think that would be kind of over the -- I would be -- no.
     I would not expect a nurse to make that deduction.

2

3    . . . .

4    Q:  If the patient reported that drinking the water caused him pain
     would that lead you to think that an esophageal tear was a
     possibility?

5

6    A:  If a patient took Maalox and then a patient swallowed water
     and they say every time they drink something it's making it worse,
     then I would start thinking there might be something wrong with
7    the esophagus, sure.

8

Klingman Deposition, at 28-29.

9

II.  Eighth Amendment Claim

10

     A.  Merits

11

           Plaintiff claims that defendant Neal violated his rights under the Eighth

12

Amendment by acting with deliberate indifference to plaintiff's medical condition on the evening

13

of January 4, 2001.  Defendant Neal seeks summary judgment on plaintiff's Eighth Amendment

14

claim on the grounds that there is no evidence that he was deliberately indifferent to plaintiff's

15

serious medical needs.  Specifically, defendant Neal contends that (1) his actions did not cause

16

medical harm to plaintiff; and (2) there is no evidence that he knew of and disregarded an

17

excessive risk to plaintiff's health.

18

           In order to prevail on his Eighth Amendment claim plaintiff must prove that he

19

had a "serious medical need" and that defendant acted with "deliberate indifference" to that need.

20

Estelle v. Gamble, 429 U.S. 97, 105 (1976).  A medical need is serious if "the failure to treat a

21

prisoner's condition could result in further significant injury or the 'unnecessary and wanton

22

infliction of pain.'"  McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir.1992) (quoting Estelle,

23

429 U.S. at 104).  Deliberate indifference is proved by evidence that a prison official "knows of

24

and disregards an excessive risk to inmate health or safety; the official must both be aware of the

25

facts from which the inference could be drawn that a substantial risk of serious harm exists, and

26

1  he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994).  Mere

2  negligence is insufficient for Eighth Amendment liability.  Frost v. Agnos, 152 F.3d 1124, 1128

3  (9th Cir. 1998).

4          Whether a defendant had requisite knowledge of a substantial risk is a question of

5  fact and a fact finder may conclude that a defendant knew of a substantial risk based on the fact

6  that the risk was obvious.  Farmer, 511 U.S. at 842.  While the obviousness of the risk is not

7  conclusive, a defendant cannot escape liability if the evidence shows that the defendant merely

8  refused to verify underlying facts or declined to confirm inferences that he strongly suspected to

9  be true.  Id.  Deliberate indifference specifically to medical needs "may be shown by

10  circumstantial evidence when the facts are sufficient to demonstrate that a defendant actually

11  knew of a risk of harm."  Lolli v. County of Orange, 351 F.3d 410, 421 (9th Cir. 2003).

12          "Prison officials are deliberately indifferent to a prisoner's serious medical needs

13  when they deny, delay, or intentionally interfere with medical treatment."  Hallett v. Morgan, 296

14  F.3d 732, 744 (9th Cir. 2002) (internal citations and quotation marks omitted).  However, delay

15  in providing medical treatment to a prisoner does not constitute deliberate indifference unless the

16  delay causes harm.  Shapley v. Nevada Bd. of State Prison Com'rs, 766 F.2d 404 (9th Cir. 1985).

17  "A prisoner need not show his harm was substantial; however, such would provide additional

18  support for the inmate's claim that the defendant was deliberately indifferent to his needs."  Jett

19  v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing McGuckin, at 1060).

20          In the instant case, it is undisputed that plaintiff's condition on the evening of

21  January 4, 2001 constituted a serious medical need, and that on that evening, defendant Neal

22  characterized plaintiff's complaint as "severe."  It is also undisputed that defendant Neal took

23  plaintiff's vital signs, performed an EKG, and listened to plaintiff's chest and lungs in an effort

24  to rule out a variety of possible causes for plaintiff's symptoms.   It is also undisputed that

25  plaintiff suffered significant pain and exacerbated symptoms throughout the night after he

26  returned to his cell as directed by defendant Neal.

1    There are disputes, however, over plaintiff's appearance and condition when he

2   presented to defendant Neal, as well as plaintiff's response to the water and Maalox provided by

3   defendant Neal.  Plaintiff avers that while he was being questioned by defendant Neal the pain he

4   was experiencing became "exacerbated" and he was having "extreme difficulty breathing."  Brief

5   in Opposition to Defendant's Summary Judgment Motion, filed December 11, 2007, at 2.[2]

6   Plaintiff also avers that he made repeated requests to have an x-ray taken and to see a doctor, and

7   that as defendant Neal denied those requests plaintiff became increasingly frightened and frantic.

8   See id.  Plaintiff further avers that after he took the Maalox the pain "became worse than ever

9   before."  Id. at 3.

10    Defendant Neal, on the other hand, avers that he observed that plaintiff "was

11   relatively calm, spoke to me in a normal voice, walked calmly about the treatment room, and was

12   breathing normally."  Neal Declaration, at ¶ 10.  Defendant Neal also avers that plaintiff initially

13   told him the Maalox helped the symptoms, and then that "the pain had returned."  Id. at ¶ 15.

14   Defendant Neal's care note, however, reflects that water and Maalox exacerbated plaintiff's

15   symptoms.  Ex. A to Neal Declaration.

16    These disputes of fact preclude summary judgment for defendant Neal on

17   plaintiff's claim.  Defendant Neal contends that there is no evidence that he "purposely ignored

18   or failed to respond" to plaintiff's medical needs.  Neal's Points and Authorities, at 12.

19   However, the parties' disputes over plaintiff's anxiety level, his ability to breathe, and his

20   response to the water and Maalox provided by defendant Neal preclude summary judgment on

21   this ground.

22    The essence of plaintiff's claim arises from the delay in access to a physician.

23   There was no physician in the clinic at CSP-Solano on the evening of January 4, 2001, but a

24

25    [2]  This brief is signed by plaintiff under penalty of perjury.  It is therefore properly
     considered as an affidavit in support of his opposition to the extent that the facts contained
     therein are based on plaintiff's personal knowledge and admissible in evidence.  See Schroeder v.

26   MacDonald, 55 F.3d 454, 460 (9th Cir. 1995).

1   physician was available on call for emergencies.  Although he characterized plaintiff's complaint

2   as severe, defendant Neal did not call a physician that night, and plaintiff was not seen by a

3   physician until the next day.  Defendant has presented evidence that examination by a physician

4   was required to accurately diagnose plaintiff's ruptured esophagus, as well as evidence that if

5   Maalox exacerbated plaintiff's symptoms a physician would have suspected a problem with

6   plaintiff's esophagus.  The evidence of record raises a triable issue of material fact as to whether

7   plaintiff  was experiencing sufficient symptoms that, notwithstanding the steps he did take,

8   defendant Neal acted with deliberate indifference in failing to call a physician on the night of

9   January 4, 2001.

10          Defendant Neal also contends that the overnight delay did not cause plaintiff

11  cognizable harm because plaintiff received the same surgery on January 5, 2001 that he would

12  have received on January 4, 2001, with the same successful results.  Defendant Neal also

13  contends that the delay "did not cause any residual problems for [plaintiff] and had no

14  connection" to a second ruptured esophagus suffered by plaintiff a year later.  Memorandum of

15  Points and Authorities in Support of Defendant Donald Neal, R.N.'s Motion for Summary

16  Judgment, filed November 16, 2007 (Neal's Points and Authorities), at 11-12.  Defendant Neal

17  construes too narrowly the types of harm that violate the Eighth Amendment.  It is undisputed

18  that plaintiff experienced severe pain and vomited blood during the night of January 4, 2001 into

19  the morning of January 5, 2001.  The unnecessary experience of severe pain from an untreated

20  medical condition can constitute harm for purposes of an Eighth Amendment claim arising from

21  delay in access to necessary medical care.  See, e.g., Hunt v. Dental Dept., 865 F.2d 198, 200

22  (9th Cir. 1989).  Defendant Neal is not entitled to summary judgment on the ground that his

23  actions did not cause harm to plaintiff.

24          B.  Qualified Immunity

25          Defendant Neal also seeks summary judgment on the ground that he is entitled to

26  qualified immunity from liability on plaintiff's Eighth Amendment claim.  "[G]overnment

1   officials performing discretionary functions[] generally are shielded from liability for civil

2   damages insofar as their conduct does not violate clearly established statutory or constitutional

3   rights." Harlow v. Fitzgerald, 457 U.S. 800, 818 & n. 30 (1982) (clarifying in note that rule

4   applicable to actions brought directly under constitution against federal officials also applicable

5   to state officials sued under section 1983). The court is required to address two issues

6   sequentially when determining whether governmental officials are entitled to qualified immunity:

7   (1) whether, taken in the light most favorable to the plaintiff, the facts show defendant's conduct

8   violated a constitutional right; and (2) whether that right was clearly established. Saucier v.

9   Katz, 533 U.S. 194, 201 (2001). In determining whether the right in question was clearly

10  established the court must address "whether it would be clear to a reasonable officer that the

11  conduct was unlawful in the situation he confronted." Id. at 202.

12          The same disputes of fact that prevent summary judgment for defendant Neal on

13  the merits of plaintiff's Eighth Amendment claim also preclude a finding that defendant Neal is

14  entitled to qualified immunity. There are triable issues of material fact which, if resolved in

15  plaintiff's favor, could support a finding that defendant Neal acted with deliberate indifference in

16  sending plaintiff back to his cell without contacting a physician. Moreover, if plaintiff's version

17  of events is true, it would have been clear to a reasonable nurse that further medical attention was

18  required before plaintiff was sent back to his cell. Defendant Neal is not entitled to summary

19  judgment on the grounds of qualified immunity.

20  III. Statute of Limitations

21          Defendant Neal also seeks summary judgment on the ground that plaintiff's claim

22  is barred by the statute of limitations. Defendant's motion to dismiss this action as barred by the

23  statute of limitations was denied by the district court on May 21, 2007 in an order adopting

24  findings and recommendations issued by this court on April 26, 2007. The relevant part of the

25  April 26, 2007 findings and recommendation are as follows:

26  /////

California law determines the applicable statute of limitations in this § 1983 action. See Wilson v. Garcia, 471 U.S. 261 (1985). Until December 31, 2002, the applicable state limitations period was one year. See Jones v. Blanas, 393 F.3d 918, 927 (9th Cir. 2004) (citing Cal.Civ.Proc.Code § 340(3) (West Supp. 2002); see also Maldonado v. Harris, 370 F.3d 945, 954-55 (9th Cir. 2004).[3] Effective January 1, 2003, the applicable California statute of limitations was extended to two years. See Jones, 393 F.3d at 927 (citing Cal.Civ.Proc.Code § 335.1). California law also tolls for two years the limitations period for inmates "imprisoned on a criminal charge, or in execution under the sentence of a criminal court for a term less than for life." Cal.Civ.Proc.Code § 352.1.[45]

In the instant case, plaintiff alleges that his rights under the Eighth Amendment were violated on January 4, 2001 when he went to the prison infirmary with complaints of chest pain and defendant Neal acted with deliberate indifference to those complaints. There is no dispute that plaintiff's claim accrued on January 4, 2001. At the time plaintiff's claim accrued, in accordance with the provisions of Cal.Civ.Proc.Code §§340(3) and 352.1, he had until January 4, 2004 to file a civil rights action arising from those events. On January 1, 2003, the statute of limitations was extended to two years. Federal law governs whether a new statute of limitations applies retroactively. See Jones v. Blanas, 393 F.3d 918, 927 n.4 (9th Cir. 2004). Under federal law, "'a newly enacted statute that lengthens the applicable statute of limitations may not be applied retroactively to revive a plaintiff's claim that was otherwise barred under the old statutory scheme'. . . ." Jones, id. (quoting Chenault v. United States Postal

---

[3] Federal law governs when plaintiff's § 1983 claims accrued and when the limitations period begins to run. Cabrera v. City of Huntington Park, 159 F.3d 374, 379 (9th Cir. 1998). Under federal law, "the claim generally accrues when the plaintiff 'knows or has reason to know of the injury which is the basis of the action.'" Id. (citations omitted).

[4] "The California courts have read out of the statute the qualification that the period of incarceration must be 'for a term less than for life' in order for a prisoner to qualify for tolling." Jones, at 927 n.5 (citations omitted).

[5] The limitation period is also tolled while an inmate is exhausting administrative remedies as required by 42 U.S.C. § 1997e(a). See Brown v. Valoff, 422 F.3d 926, 943 (9th Cir. 2005). In the instant case, administrative exhaustion was completed during the two year period of statutory tolling. (See Memorandum dated July 11, 2002, appended as exhibit to original complaint; see also Memorandum dated May 1, 2002, appended as exhibit to original complaint.) The record reflects that petitioner was exhausting administrative remedies from May 18, 2001 until at least May 1, 2002, and perhaps July 11, 2002. It is unsettled whether this period of tolling should be subsumed in the two year statutory tolling period of Cal. Code § 352.1 or added as an additional period of tolling. Defendant argues the former position, relying principally on propositions of state law and public policy. The court does not resolve the question on this record.

1   Service, 37 F.3d 535, 539 (9th Cir. 1994)). "A claim is barred, or
    'stale,' if the applicable statute of limitations period expires prior
2   to the enactment of the statutory enlargement." Jordan v. Herrera,
    2003 WL 22668840, slip op. at 4 (C.D. Cal. 2003). Where, as
3   here, the limitations period on plaintiff's cause of action had not
    expired at the time the statute of limitations was enlarged, the new
4   limitation period applies. See id.[6] Plaintiff therefore had until
    January 4, 2005 to file his civil rights complaint.

5
        The question of when the complaint was filed, however, is more
6   complicated. Under the rule announced in Houston v. Lack, 487
    U.S. 266 (1988), this action is deemed filed on the date it was
7   delivered to prison officials for mailing. Defendant asserts that
    because there is no certificate of service attached to the original
8   complaint, the filing date should be deemed the date on which the
    original complaint was file stamped by the Clerk of the Court in
9   the United States District Court for the Northern District of
    California.[7] Defendant has failed, however, to tender any legal
10  authority or any factual support for this proposition.

11      The record reflects that plaintiff's original complaint is dated
    November 29, 2004.[8] Plaintiff's in forma pauperis application,
12  filed the same day as the complaint, is dated December 22, 2004.
    The trust account statement appended to plaintiff's in forma
13  pauperis application is dated December 28, 2004. The certificate
    of funds appended to the in forma pauperis application was
14  received by prison officials at California State Prison-Solano (CSP-
    Solano) for completion on December 27, 2004, but was not signed
15  by an authorized prison official until January 5, 2005. The original
    complaint was file stamped in the United States District Court for
16  the Northern District of California (Northern District) on January
    25, 2005, and was file stamped in this court on February 14, 2005
17  after an interdistrict transfer from the Northern District.

18  _____

19      [6] Defendant asserts that the new two year statute of limitations does not apply
    retroactively and, therefore, that the applicable limitation period for plaintiff's claim is one year.
20  (Defendant Donald Neal, RN's Memorandum of Points and Authorities in Support of His Motion
    to Dismiss, filed December 14, 2006, at 2-3.) Defendant Neal does not, however, analyze how
21  this principle applies to the facts of this case. Moreover, defendant Neal then argues that the
    statute of limitations was tolled by the provisions of Cal. Code Civ. Proc. § 352.1(a) until
22  January 4, 2003. (Id. at 3.) At that point, the new two year limitations period was in effect. See
    Jones, at 927.

23      [7] Defendant contends in the alternative that even if the date the complaint was signed,
24  November 29, 2004, is used as the filing date this action is still time-barred. This argument
    proceeds from the erroneous application of a one year limitation period combined with the two
25  year tolling provision to the instant action.

26      [8] The action is now proceeding on plaintiff's second amended complaint, filed May 24,
    2005.

There is nothing in the record that clearly establishes when the complaint and the in forma pauperis application were delivered to prison officials for mailing. It does appear, however, that by December 27, 2004, plaintiff had completed both the complaint and the in forma pauperis application and that he had delivered the in forma pauperis application to prison officials at CSP-Solano to complete the necessary certification. There was then a delay of at least nine days before the trust account certification was signed by a prison official. (See Prisoner's In Forma Pauperis Application, filed January 25, 2005, at 4 (certification dated January 5, 2005).) Thereafter, twenty more days passed before the action was file stamped in the United States District Court for the Northern District of California.

As a general proposition, "'[w]hen a *pro se* petitioner alleges that he timely complied with a procedural deadline by submitting a document to prison authorities, the district court must either accept that allegation as correct or make a factual finding to the contrary upon a sufficient evidentiary showing by the opposing party.'" Caldwell v. Amend, 30 F.3d 1199, 1202 (9th Cir. 1994) (internal citation omitted). In the instant case, plaintiff has made no specific allegation of the date on which he delivered his documents to prison officials for mailing, but he plainly asserts that this action was timely filed.[9] Defendant, who has both the burden to make a factual showing sufficient to contradict an implicit assertion by plaintiff that his action was timely under the mailbox rule, and to make both a factual and legal showing sufficient to prevail on this motion, has made no evidentiary showing at all concerning the date on which this action was delivered to prison officials for mailing.

This court finds that plaintiff had taken all steps necessary to prepare his complaint and accompanying documents for mailing to the court on or before December 27, 2004. This court further finds that defendant has failed to tender any evidence suggesting that the documents were in fact delivered to prison officials for mailing to the court at a later date. Accordingly, the court finds defendant has failed to meet his burden to show that plaintiff delayed delivering the complaint to prison officials for mailing to the court until after the operative limitation period expired.

Findings and Recommendations, filed April 26, 2007, at 2-6.

Defendant Neal now contends that plaintiff did not deliver his complaint to prison officials for mailing until January 18, 2005 and that it is therefore time-barred. In support of this contention, defendant Neal has now presented evidence that, in accordance with the usual custom

---

[9] Plaintiff focuses much of his attention in opposition to the motion on the alleged time it took to complete the process of exhausting administrative remedies.

and practice at CSP-Solano, requests by inmates for certified copies of their trust account

statements are processed within one to two weeks of the request; that the certified copies, when

ready, are sent to the inmate's correctional counselor; that plaintiff would have been notified by

his correctional counselor that the certified copy of his inmate trust account statement was ready

within one working day after the counselor received the certified copy of the statement; that

thereafter it would have been plaintiff's responsibility to bring the complaint to the counselor's

office to put together with the trust account statement in an envelope for mailing to the court; and

that plaintiff's correctional counselor would have put the completed envelope in the outgoing

institutional mail on the same day the envelope was prepared for mailing.  See Declaration of

Correctional Counselor Martha Lemus in Support of Donald Neal, R.N.'s Motion for Summary

Judgment, filed November 16, 2007 (Lemus Declaration), at ¶¶ 4-6.  Defendant Neal has also

now presented evidence that plaintiff's complaint was placed in the institutional mail after 3:00

p.m. on January 17, 2005 or before 3:00 p.m. on January 18, 2005.  See Declaration of Angela

Allen in Support of Donald Neal, R.N.'s Motion for Summary Judgment, filed November 16,

2007 (Allen Declaration), at ¶¶ 3-4.

Plaintiff opposes defendant's renewed contention that this action is time-barred.

In support of his opposition, plaintiff points to evidence that he sent his in forma pauperis

application to the prison trust account office on December 22, 2004; that it was stamped by that

office at 8:00 a.m. on December 27, 2004; and that it was with the trust account office until

January 5, 2005, when it was sent to plaintiff's correctional counselor.

The evidence of record now shows that by December 22, 2004, plaintiff had

completed his in forma pauperis application to submit to the trust account office.  The trust

account office stamped plaintiff's application at 8:00 a.m. on the morning of December 27, 2004,

and plaintiff's inmate trust account statement was certified by that office on January 5, 2005.

According to defendant's evidence, the trust account statement would have been placed in the

institutional mail for delivery to plaintiff's correctional counselor after the certification was

1   completed.  Declaration of Jennifer Dennis in Support of Donald Neal, R.N.'s Motion for

2   Summary Judgment, filed November 16, 2007 (Dennis Declaration), at ¶ 4.  There is no evidence

3   how long it takes for a trust account statement to be delivered by institutional mail from the

4   prison trust account office to the correctional counselor.  Plaintiff's correctional counselor has

5   averred that she would have notified plaintiff within one working day after his trust account

6   statement arrived.  Lemus Declaration, at ¶ 5.  It is unclear how this notification was

7   accomplished, nor is it clear how soon after receiving the notification plaintiff would have been

8   able to go to his counselor's office.  See id., passim.

9        January 5, 2005 was a Wednesday.[10]  The evidence tendered by defendant does

10  not establish when plaintiff received notice that his trust account statement was ready, but it

11  appears the earliest plaintiff could have received that notice was Friday, January 7, 2005.  Even

12  assuming arguendo that plaintiff did in fact receive notice on Friday, January 7, 2005 and that he

13  would have been able to see his correctional counselor on the same day, the record shows that

14  plaintiff's in forma pauperis application was out of his control from at least December 22, 2004[11]

15  through January 7, 2005, or a period of sixteen days.  Plaintiff's complaint was received by

16  prison officials for mailing on January 18, 2005, or fourteen days after the limitation period

17  expired.[12]

18        This court finds that defendant has still not shown that the delay in delivering the

19  complaint to prison officials for mailing is attributable to plaintiff, rather than to delays in

20

21        [10]  See http://www.timeanddate.com/calendar/?year=2005&country=1.

22        [11]  Plaintiff states in his opposition that he mailed his in forma pauperis application to the
    trust account office on December 22, 2004, but the opposition is not signed under penalty of
23  perjury.  However, in 2004, December 24, 2004 fell on a Friday and was a holiday.  See
    http://www.timeanddate.com/calendar/?year=2004&country=1.  Since the application was
24  stamped by the trust account office at 8:00 a.m. on Monday, December 27, 2004, the court infers
    that plaintiff did in fact place the application in the institutional mail on December 22, 2004.

25

26        [12]  As noted above, defendant's evidence establishes that the complaint was placed in
    institutional mail for delivery for outside mailing either on January 17, 2005 or January 18, 2005.

1  institutional procedures.  Defendant is not entitled to summary judgment on the ground that this

2  action is time-barred.

3          For all of the foregoing reasons, IT IS HEREBY RECOMMENDED that

4  defendant's November 16, 2007 motion for summary judgment be denied and this matter be

5  referred back to the undersigned for further pretrial proceedings.

6          These findings and recommendations are submitted to the United States District

7  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

8  days after being served with these findings and recommendations, any party may file written

9  objections with the court and serve a copy on all parties.  Such a document should be captioned

10  "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that

11  failure to file objections within the specified time may waive the right to appeal the District

12  Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

13  DATED: August 7, 2008.

14

15                                    UNITED STATES MAGISTRATE JUDGE

16

17  12
18  john0298.msj

19

20

21

22

23

24

25

26